We'll move now to appeal 24-2649 Chicago Teachers Union, Local v. Educators for Excellence,  Mr. Gagin, we'll go with you first. My name is Tom Gagin. Good morning, Your Honor. I am representing the appellant, Chicago Teachers Union, and Mosleen Parker. May it please the Court, when someone violates federal law, there should be some way of holding that person liable. That's the gist of our appeal here, and under this Court's decision in Local 150 v. Ward, where this Court implied a legal remedy on behalf of the Union to enforce Title V of the LMRDA, likewise, this Court, under the same logic, should imply a remedy for the Union to enforce Title IV of the LMRDA, or one specific provision, and that provision is Section 401G of the LMRDA, which is a prohibition against employers from helping union officer candidates in an election, from subverting the election, from providing aid, from recruiting candidates to run in that election. The defendant in this case, we alleged, in a pre-election suit, was violating that prohibition. Is the question whether or not there is an implied cause of action a jurisdictional question or a merits question? It is a merits question, because there's unquestionably federal question jurisdiction here, and the issue is whether there is a cause of action, not whether there is jurisdiction. The District Court properly found that there was jurisdiction, subject matter jurisdiction, over the issue, but found no cause of action. And the reason there is a cause of action, an implied cause of action, under the logic of Local 150, is that without a remedy, the employer has, faces no consequences for violating the law. There is no express remedy that the union has, that the member has, that even the Secretary of Labor has against the employer. This is a situation that I respectfully submit may have no parallel in federal law, where an entity faces a federal prohibition and can violate it without any consequence at all. And worse than having no consequence at all, if the employer violates it to the degree that it affects the outcome of the union officer election, then the Secretary of Labor brings a suit against the union, not the employer, in fact has no jurisdiction to stop the employer from violating the law again. In this case, the logic of Local 150 calls out for the same kind of implied remedy that this circuit decided existed to enforce Title V, maybe even more so here. While this is a regulatory prohibition, and I'm going here into the logic of Local 150, which says if there's a right, there should be a remedy. While this is a regulatory prohibition, and Title IV is really a series of regulatory prohibitions against certain types of conduct, it is also an affirmative right of the member, not just a regulatory prohibition against an entity, but it has a counterpart, usually in Title I of the LMRDA. That's what the Supreme Court decided in Crowley v. Local 82. It has a counterpart in Title I, which is why many of the regulatory prohibitions in Title IV, not all of them, but many of them, can be enforced pre-election under Title I as violations of an affirmative right that belongs to the member. And what is that affirmative right? It's an affirmative right for which the entire statute, LMRDA, exists. It is to confer upon members of unions the right to have democratic control of their union, to have leaders that are accountable to them and not beholden to outside interests, because union membership is not just some nominal right or even a civic right, it's an economic right. It is a right of great economic value to the membership, and it should be protected by democratic means. So, for that reason, the union member in Crowley v. Local 82 was deemed to have a Title I right to enforce what the court said is, in effect, a 401G prohibition. And the court made clear in Crowley why it was doing it. Mr. Kagan, as I understand it, Section 42A1 requires exhaustion of remedies. That is correct. Did the union exhaust its remedies here? Well, it requires exhaustion of remedies when a member is seeking to challenge the outcome of an election. And in the case here where the member was suing, and the CTU was suing both as an institution and as an association of its members, there wasn't any remedy to exhaust because the union has no power to stop the employer from interfering in its affairs. In every other case, you're correct, Judge, the union member should exhaust remedies because in 90% of the issues that come up during an election, it's the union's conduct that is at issue. So you go to the union first to determine whether the union will correct its own conduct. But here the union did nothing. In fact, the union is the victim. And that's what's so pernicious here, that the union, both as an association of its members, representing its members' rights, and as an institution that has an obligation to its members to provide them a fair election, the union has no express remedy unless one is implied. And there's no way, really, to make the LMRDA work without this implied remedy. And while that might seem an extraordinary statement, it's become commonplace in judicial decisions, especially including in this circuit, and beginning with Crowley, to say that the LMRDA is a very poorly drafted statute. The Title I was added on the floor, that it's hard to make sense of what is Title I and what is Title IV, and there has to be a certain amount of judicial work that has to be done. And there has been judicial work that has been done, and Crowley is very significant in doing a lot of that work. And Crowley's holding is that there's an overlap between Title IV and Title I. Now, it's true that there's no express Title I remedy against an employer, which is exactly why we're here to say that under the logic of Local 150, there should be an implied remedy. The same interplay between the prohibition and the right that justifies pre-election suits to enforce regulatory prohibitions in effect, as Crowley said, should apply here. But, counsel, where's your argument that this is what Congress intended, that Congress intended to create a private right, even if the statute isn't a model of clarity? That's what we need to look at. I mean, the days of, there's a right, so we need to, as a court, ensure there's a remedy. I don't think that's good case law anymore, right? Now we're instructed that we need to determine whether or not Congress intended to create that private right. And here, in 41C, Congress is pretty clear. Whatever we want to agree about the rest of this statute, 41C is pretty clear. You have a right of action. You can come to federal court. And here, there is no right of action, at least that's expressly provided for. So where do you get the reading that Congress intended the private right of action? In this way. That if you look, Your Honor correctly pointed out that 401C, or 481C, I suppose we should say, creates an express right of action, and there is no other express right of action on Title IV. But Crowley has held that, in effect, because Title I and Title IV have to be resolved together, there are really rights of action to enforce the 401G prohibitions pre-election. And let me just make this point, which is that in every other case, you name the violation, there is a remedy by the member ultimately. So, except for employer violations. That is, you can either have a pre-election suit under Title I, which is what the Supreme Court held that this statute does provide, or you can go to the secretary to have the secretary come after the violator, which is always the union. There's this only one area, this tiny piece of it, where there's no remedy at all. And given the nature of the right that is given to the member to have the right to vote, it's appropriate, under the same logic as Local 150, to imply a remedy here. Or put another way, at a minimum, Congress could not have possibly intended that the union will be held liable for a violation by the employer without the union having any power to save itself from that. Congress could not have intended that. Now, how do we know that? Is that just a conjuring? The Supreme Court in Sadlowski v. Steelworkers pointed out that there's the strongest congressional policy against employers from coming in and interfering in union officer elections. Sadlowski is eloquent on that point, and it is also in federal law in other ways. So, Section 302 of Taft-Hartley prohibits an employer from paying off a union officer. Section 882 of the National Labor Relations prohibits employers from dominating a union. And other provisions of federal law, you know, racketeering acts and other ways, are all aimed at stopping employers from subverting unions. So, if there's ever a congressional policy that is as clear as daylight, it is that employers should not be violating, should not be trying to interfere in union officer elections. Would you like to reserve the remainder of your time for a moment? I will reserve the rest of my time. Very good. Thank you, Mr. Gagin. Mr. Martin will now move to you for argument on behalf of the appellee. Good morning. May it please the Court. I am Josh Martin for the Appellees. In the nearly seven decades since the LMRDA was enacted, no court has held Section 481g to create a private right of action. As this Court has long recognized, an implied remedy exists only where there is a persuasive evidence that Congress intended to create one, and any inquiry into congressional intent   must begin with the language of the statute itself. Here, the statutory text demonstrates, in at least four ways, that Congress did not intend to create a private right of action under Section 481g. First, Title IV contains an express remedy for violations of Section 481 and Section 482, which the statute explicitly says in Section 483 is an exclusive remedy. Second, that express remedy calls for enforcement by a public official, which courts typically recognize as precluding an implied cause of action. Third, a different subparagraph of Section 481, Section 481c, also contains an express remedy for certain violations, undermining any inference that Congress intended to create an implicit remedy in Section 481g. And fourth, other portions of the LMRDA, specifically Title I and Title IV, also create express causes of action for union members to bring suit in search of certain violations, further demonstrating that when Congress intended to create a remedy, it did so expressly, not by implication. Mr. Martin, a similar question as I posed to Mr. Gagin, is whether the union has an implied cause of action a jurisdictional question or a merits question. We agree that it's a merits question here for the same reasons said by opposing counsel. Thank you. The union also alleges that there will be a violation of the Act at some point in the future. Is there any kind of a rightness problem here? We think that this is really a post-election challenge related to the 2022 union election. In the intervening time, there's been a second, you know, 2025 union election, which again, they do not challenge the outcome of the election itself, and there's been no allegations of wrongdoing that we're aware of in this case or any other case. So to the extent that this is looking for a permanent injunction against an employer for all potential future involvement, we don't understand why they're singling out our client. We think that this would open the floodgates to allege that any employer has recruited or, you know, provided monetary support for a candidate in violation of 481G and get into federal court for pre-election purposes per se. You're not disputing that your client is an employer under the Act? We're not disputing that it's an employer under the Act under the broad definition of employer, but I don't think that that is dispositive in this case. To the extent that I was going to address legislative history, but we broadly didn't come up in the first half of this argument, but if all that textual evidence were not enough, the legislative history confirms that Congress struck a careful balance of rights and remedies in Title IV and did not invite courts to police union elections except on narrow and expressly enumerated circumstances, far from the powerful showing of congressional intent necessary to substantiate an implied private right of action. The available evidence here points firmly in the opposite direction. Subject to the court's questions, I'd like to walk briefly through each of these textual indications and also briefly explain why state law does not provide a cause of action here either. The enforcement mechanism for Section 481, including 481G, is set out in Section 482, which provides that a union member who has taken steps to exhaust available remedies under union bylaws, which CTU has not done here, or the individual union member, may file a complaint with the Secretary of Labor to allege the violation of any provision of Section 481. The Secretary may then investigate the complaint and if she finds probable cause to believe that a violation of Section 481 has occurred and has not been remedied, they may bring a civil action against the labor organization, including intervening to oversee a new election. And Section 483 states that the remedy provided by this subchapter for challenging an election already conducted shall be exclusive. Reading that text, it is clear that Congress intended Section 482 to be the exclusive federal remedy. That is to say that the remedy provided within this subchapter, Title IV, which challenges an election already conducted, describing Section 482, is exclusive for enforcement by this subchapter. The statute in Section 483 even says that existing rights and remedies to enforce the Constitution and bylaws of a labor union with respect to elections prior to the conduct thereof shall not be affected by the provisions of this subchapter. Shall not be affected means that the text makes clear that Congress did not intend to create any additional rights and remedies, such as the private right to suit, under Title IV, beyond what was already existing prior to the enactment of the LMRDA. So based on the plain reading of the LMRDA, courts have agreed that there is no private cause of action under Title IV because Title IV may only be enforced by the Secretary of Labor. And that goes all the way back to the Supreme Court case Calhoun v. Harvey in 1964 which stated Section 402 of Title IV sets up an exclusive method for protecting Title IV rights by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violations of Title IV. Calhoun v. Harvey itself was a pre-election case asking for an injunction which is what opposing counsel alleges they're asking for here. And courts have followed suit, including the Seventh Circuit in Kempthorne v. United Transportation Union in 1972 and Driscoll v. International Union in 1973 both of which also sought pre-election injunctions and in Driscoll it states We are browned by Calhoun v. Harvey which itself was a pre-election case and which impliedly required that the election first be held before any Title IV remedies be made available to the plaintiffs. Other circuits have followed suit. In this case, this court has held the remedy of Section 42 to be exclusive as recently as 2010 in Horner v. Solis. The Supreme Court in Alexander v. Sandoval suggested that when there's an express enforcement provision that suggests that Congress intended to preclude other remedies such as implied causes of action and courts typically take a statutory provision for enforcement by a public official as implying that no other means of enforcement was intended. For example, this court ruled in Stewart v. Parkview Hospital in 2019 that the sole remedy for a HIPAA violation was to be brought by the Secretary of Health and Human Services because that statute HIPAA included an express remedy and denied it a private cause of action. What about Mr. Gagin's argument here that this would be a violation without consequence? It would be with impunity if there is no remedy here? We think that there are plenty of adequate remedies outside of a private cause of action here, namely especially because of we think that Section 42 provides an adequate remedy, but specifically that exhausting internal remedies would have been able to provide an adequate remedy here, which CTU did not do here. So for example, we in our brief cite CTU's bylaws that were active during the 2022 election and those remedies include those bylaws include a prohibition on contributions from all non-members which would include E4E and then there are election protests under Section 18 of those bylaws and it says that the protest to the eligibility or non-eligibility of any nominated candidate under these rules can be filed within two calendar days of the announcement of candidates or if they wanted to protest the election results themselves any protest to the conduct of the election or any candidate's conduct during the election period under these rules must be filed in writing within five calendar days of the announcement of election results. And then under the same Section 18 sub-letter D says the rules election committee shall issue its written decisions regarding the challenge or protest no later than ten calendar days after its receipt of the challenge or protest. So in theory if a candidate they believe that they're running against if you're the plaintiff here the individual plaintiff you believe is being funded by an outsider they could have filed a protest two days after their nomination or within five days of the election results being certified and gotten an election result returned by their own union board within ten calendar days in theory having a result within fifteen days of their complaint. And then if they weren't satisfied by that result they could have brought an action to the Secretary of Labor under Section 482 and the Secretary of Labor could have rerun the election or because to point out the protest about the suit being against the union if the union wanted to have a voluntary compliance agreement with the Secretary of Labor they wouldn't have to be in district court at all. They could avoid that process and the Secretary of Labor could rerun an election without the violating conducts as long as the Secretary of Labor found the investigation that there was probable cause that the that the statute was violated such that it affected the outcome of an election. So that is my response on why there were adequate remedies here. And in theory because E4E is an employer the Secretary of Labor may be able to bring an action against E4E. We have not seen an example of that case in the past but in theory they're governed by the Secretary of Labor and under Title IV of the LMRDA as well. So additionally there are another sub-letter as mentioned in your question earlier Judge Kohler and Section 481C that has an express cause of action under the same under the same under a different sub-letter of the same section of the statute which also implies that the Congress could have intended could have written an express remedy if they wanted to likewise Title I, Section 412 and Title V, Section 501 of the LMRDA both provide causes of action for their titles of the statute and there is no such blanket private right of action under Title IV. And there is a Title IV case McBride v. Rockefeller Family Foundation and the Second Circuit which explicitly disposed of a Section 481G claim for want of a private cause of action. So instead opposing counsel relies on Crowley to say that Title I and Title IV rights overlap because there's no Title IV case on point here which authorizes a private suit but in fact if you read appellant's opening briefs at page 10 when analyzing Crowley they themselves write that while the Secretary of Labor exclusively enforces Title IV and they themselves write the Secretary of Labor exclusively enforces Title IV there's nothing in the legislative history suggesting Congress intended to foreclose all access to federal courts under Title I during an election but we're not here to litigate Title I we're here to litigate Title IV and Crowley remains good law it just doesn't grant the appellants the relief they request here where they are asking the court to grant a private right of action under Title IV likewise they mention Sadlowski as evidence of congressional intent that there should be no outsider involvement in elections and we agree that Congress intended to limit outsider involvement in elections based on this 481G that we're talking about now but Sadlowski is Title I and it's inapplicable and what it really stands for is that unions should be able to create reasonable rules that are rationally related to a legitimate purpose to govern their own affairs which is what they can do here and what they should have done by enforcing their own bylaws to disqualify candidates who they believe are impermissibly taking benefits from an employer in violation of Section 481G and their own bylaws and Ward is just simply a different case because Title V has an express remedy and the court and Ward essentially extended that express remedy to unions themselves instead of union members and in Ward you'll see that there's a circuit split and the Supreme Court had failed to resolve the issue of whether a union could bring a private suit under Title V and here there's really just no circuit split we have Calhoun v. Harvey saying that there's no private right of action under Title IV way back in 1964, every circuit has followed suit since. With only one minute left I want to make sure that I address state law remedies and there just simply isn't an Illinois cause of action here because there's no statute granting a right of action, there's not a clearly ascertainable right independent from the LMRDA and there's not a Van Dale style cause of action here opposing counsel doesn't identify an Illinois statute that provides a cause of action, instead they merely cite language that injunctions will be granted when there are clearly ascertainable rights in need of protection, which is just part of a four part test that applies to injunctions in Illinois law and it requires a likelihood of success on the merits, well if the merits are dependent on the LMRDA section 481g then you know we're not getting to the merits then, they also cite Van Dale which is an Illinois Supreme Court case from 1972 but they severely overstate Van Dale's holding, courts over and over again in Illinois and I'm sorry about my time have held Van Dale to stand for the limited proposition that courts will only intervene in voluntary organizations when plaintiffs have been stripped of substantial economic benefits without due process, such as the expulsion action where plaintiffs demonstrate indicia of bias in the expulsion process you can see a number of cases in our brief that discuss that, thank you. Thank you Mr. Martin. Mr. Gagan we'll go back to you now for rebuttal we'll give you three minutes on rebuttal. Thank you Judge. First I want to correct a statement of my brother counsel here CTU and Mosley and Parker are not challenging the conduct of an election so we are not within the framework of 483 which says that challenging the conduct of an election or challenging an election already conducted is exclusively the province of the secretary we completely agree with that and this is a pre-election suit and it is a pre-election suit that is implicitly blessed in the legislative history to the extent that the legislative history is confirms that congress really did not want the secretary to interfere in union affairs except to the extent necessary and a pre-election suit allows the union to ensure that there is a lawful election that doesn't require the secretary's intervention the aside from the legislative history Senator Kennedy said explicitly that section 483 does not bar pre-election state remedies Archibald Cox who drafted this statute says it does not bar pre-election state remedies and Clyde Summers who was also involved in the drafting very prominent professor who was in labor affairs involved in the drafting wrote that it does not bar pre-election remedies I want to address this issue that there is an express remedy under 481c and therefore nothing should be applied otherwise first of all that was not the case in local 150 there is an express remedy for union members to sue for breach of fiduciary duty but the court found this circuit found that in context and given congressional intent there should be a remedy applied even though there was an express remedy for breach of fiduciary duty in the statute so under the same logic that should apply here but also to talk about discuss something important about 481c it's unlike anything else it is a right of the member to have the union conduct a mailing and on the candidate's behalf it has to be in there because it's an affirmative act what we are seeking and what all these title 1 suits are about which are enforcing title 4 prohibitions are going in for negative prohibitory injunctive relief 481c is has to be in there as a pre-election right because the remedy is a lot of affirmative relief of a very unusual kind you know the right to conduct a mailing the right to see the membership list the right to be there when the mailing goes out of course that has to be spelled out in some detail but in this case all we're seeking is just an injunction that says stop stop and the court should be more ready to apply such a remedy in that situation than and not use the elaborate kind of affirmative relief that is set up for a very specific purpose under El Mardier to make the union elections viable at all because if you don't have literature out you can't really have the election so I don't think it's fair to say that the pre-election remedy this very extraordinary affirmative pre-election remedy implies that there's no right to have what is just simple equity which is just stop violating the statute that's all that we're seeking here and it's also the case that I see that my time is up Thank you Mr. Gagin. Thank you Mr. Martin. The case will be taken under advisement.